NO. 07-05-0003-CV


IN THE COURT OF APPEALS


FOR THE SEVENTH DISTRICT OF TEXAS


AT AMARILLO


PANEL D


SEPTEMBER 15, 2006


______________________________


FRANCES CAMACHO, RICHARD J. CAMACHO,


VIVIAN C. TREVINO AND DEBORAH ANN CAMACHO, APPELLANTS


V.


CARLOS R. MONTES AND STEPHEN R. GARCIA, 
APPELLEES


_________________________________


FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;


NO. 2002-519,041; HONORABLE MACKEY K. HANCOCK, JUDGE


_______________________________

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION

Appellants Frances Camacho, Richard Camacho, Vivian C. Trevino, and Deborah 
Ann Camacho appeal the judgment entered in favor of appellees Carlos R. Montes 
and Stephen R. Garcia. We will affirm.
This is a suit to determine the ownership of the proceeds of a life insurance 
policy. Appellant Frances Camacho ("Frances") and others brought suit against 
Veterans Life Insurance Company and Gloria Garcia Camacho ("Gloria"), claiming 
the proceeds of a Veterans policy that insured the life of Delfino Camacho 
("Delfino"). (1) 
Frances purchased the $100,000 term policy on Delfino's life from Veterans in 
May of 1986, while Frances and Delfino were married. 
(2) She was named the beneficiary. Delfino and Frances divorced on 
January 3, 1994. The divorce decree awarded the ownership of all insurance on 
the life of Delfino to him. Nevertheless, Frances continued to pay the monthly 
premiums on the policy after the divorce, and she kept the policy in her 
possession. Premium notices came addressed to Delfino, in care of Frances, at 
her address. Delfino gave no written instructions to Veterans re-designating 
Frances as the beneficiary after their divorce.
After Delfino and Frances separated before their divorce, Delfino began 
living with Gloria. Delfino and Gloria were married on April 12, 2002, and 
Delfino died three days later after a long illness. 
(3) 
Veterans tendered the proceeds of the policy into the trial court's registry 
and was dismissed from the case. Gloria moved for summary judgment which, after 
hearing, the trial court granted in part. The trial court held as a matter of 
law the following: (1) Delfino was the owner of the policy; (2) the divorce 
divested Frances of any right and title to the policy; (3) there was no action 
to re-designate her as the beneficiary of the policy; and (4) under the Family 
Code (4) and the policy 
(5), Gloria was the designated beneficiary. 
The trial court then conducted a bench trial on the issue of constructive or 
resulting trust. Frances testified that Delfino told her after their divorce 
that the policy was hers because she had been paying the premiums. She testified 
that she continued to make the payments in reliance on his statement. Delfino's 
son and sister testified that it was only about a year before his death that 
Delfino found out that Frances had maintained the insurance policy. Gloria 
testified, through her deposition, that Delfino was "very upset" when he learned 
of the existence of the policy. 
At first, the trial court found that Gloria would be unjustly enriched by 
payment of the policy proceeds to her, and rendered judgment imposing a 
constructive trust on the policy proceeds in favor of Frances. On Gloria's 
motion to modify, correct, or reform the judgment, the trial court withdrew its 
previous judgment and rendered judgment awarding the policy proceeds to Gloria's 
heirs-at-law. At the request of Frances, the trial court made findings of fact 
and conclusions of law and then additional findings of fact and conclusions of 
law. 
Appellants raise the single issue on appeal whether Frances was entitled to 
the proceeds of the policy through the imposition of a constructive trust or a 
resulting trust. The Fort Worth court of appeals recently noted that "[a]lthough 
they are often confused, resulting and constructive trusts are distinguishable." 
Hubbard v. Shankle, 138 S.W.3d 474, 485 (Tex.App.-Fort Worth 2004, pet. 
denied). A constructive trust is an equitable remedy created by courts to 
prevent unjust enrichment. Id. To justify imposition of a constructive 
trust, the proponent must prove (1) breach of a special trust, or fiduciary 
relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) 
tracing to an identifiable res. Id. Strict proof of the elements is 
required. Id. (citing Mowbray v. Avery, 76 S.W.3d 663, 681 n. 
27 (Tex. App.-Corpus Christi 2002, pet. denied)). 
A resulting trust is an equitable remedy primarily involving 
consideration. Id. (citing In re Marriage of Loftis, 40 S.W.3d 
160, 165 (Tex.App.-Texarkana 2001, no pet.)). The doctrine of a resulting trust 
looks to valuable consideration, not legal title, as the deciding factor on 
equitable title or interest from a transaction. Id. When title to 
property is taken in the name of someone other than the person who advances the 
purchase price, a resulting trust is created in favor of the payor. Nolana 
Dev. Ass'n v. Corsi, 682 S.W.2d 246, 250 (Tex. 1984). A resulting trust is 
an "intent trust" employed when trust property had been used for a special 
purpose which has terminated or become frustrated so that the law implies a 
trust for the equitable owner of the property. Tricentrol Oil Trading, Inc. 
v. Annesley, 809 S.W.2d 218, 220 (Tex. 1991); see also Harris v. Sentry 
Title Co., Inc., 715 F.2d 941, 946 (5th Cir. 1983), modified 
on other grounds, 727 F.2d 1368 (5th Cir. 1984) ("A resulting 
trust is an actual, binding trust that can develop where the parties intended a 
confidential or fiduciary relationship to develop and acted accordingly, but 
failed to create a valid actual trust agreement.") A heavy burden is placed on 
the party attempting to establish the existence of a resulting trust. 
Equitable Trust Co. v. Roland, 721 S.W.2d 530, 533 (Tex.App.-Corpus 
Christi 1986, writ ref'd n.r.e.); Ratliff v. Clift, 312 S.W.2d 315, 320 
(Tex.Civ.App.-Amarillo 1958, writ ref'd n.r.e.). 
Both resulting and constructive trusts are implied by operation of law to 
prevent unjust enrichment. Hubbard, 138 S.W.3d at 486. Because 
imposition of either constitutes an equitable remedy, we review the trial 
court's decision under an abuse of discretion standard. See Gerdes v. 
Kennamer, 155 S.W.3d 541, 545 (Tex.App.-Corpus Christi 2004, no pet.) 
(trial court's decisions when sitting as court of equity reviewed under abuse of 
discretion standard). A court abuses its discretion if it acts without reference 
to any guiding rules or principles. Downer v. Aquamarine Operators, 
Inc., 701 S.W.2d 238, 241 (Tex. 1985). A trial court's ruling should be 
reversed only if it was arbitrary or unreasonable. Id. at 242. Also, 
because appellants raise no challenge to the trial court's findings of fact, the 
findings are binding unless the contrary is established as a matter of law or 
there is no evidence to support the findings. McGalliard v. Kuhlmann, 
722 S.W.2d 694, 696 (Tex. 1986).
Appellants' brief summarizes their argument, stating, "The evidence clearly 
establishes that Delfino Camacho engaged in conduct constituting a breach of a 
confidential relationship between he and Frances Camacho arising out of their 
long term marriage and friendly, post divorce relationship, the representations 
of Mr. Camacho which induced Frances Camacho to pay all premiums on the term 
policy in dispute to maintain it in effect, and the breach of his obligation to 
take whatever steps were necessary to protect the ownership of the policy and 
its proceeds in Frances Camacho." 
Texas law recognizes that a relationship on which a constructive trust can be 
based may be a formal fiduciary relationship which arises as a matter of law, 
such as that between attorney and client, or may be informal, arising from a 
moral, social, domestic, or purely personal relationship of trust and 
confidence. Thigpen v. Locke, 363 S.W.2d 247, 253 (Tex. 1962); 
Golden v. McNeal, 78 S.W.3d 488, 493 (Tex.App.-Houston [14th 
Dist.] 2002, pet. denied). 
The formal fiduciary relationship between Frances and Delfino as husband and 
wife terminated on their divorce. In re Marriage of Notash, 118 S.W.3d 
868, 872 (Tex.App.-Texarkana 2003, no pet.). Delfino did not owe a fiduciary 
duty to Frances based on their marital relationship after 1994. Frances 
testified that, after their divorce, she and Delfino were "still friends," and 
that he often called her on the telephone. As noted, Frances also 
testified that, on several occasions during their telephone conversations, 
Delfino told her the life insurance policy belonged to her. The trial court 
found "Delfino Camacho had knowledge, actual or constructive, that the Insurance 
Policy was being maintained in effect after the divorce of Delfino Camacho and 
Frances Camacho, as a result of the premium payments being paid by Frances 
Camacho." 
Appellants were required to demonstrate the special relationship of trust and 
confidence existed prior to, and apart from, the agreement made the basis of the 
suit. See Golden, 78 S.W.3d at 493 (stating the requirements of 
establishing an informal fiduciary relationship); see also Thigpen, 363 
S.W.2d at 253 (stating the "existence of the fiduciary relationship is to be 
determined from the actualities of the relationship between the persons 
involved"). After reviewing the entire record, we find that neither Delfino's 
knowledge of the policy nor Frances's statements demonstrate their relationship 
following the divorce was one of trust and confidence. Golden, 78 
S.W.3d at 493. The existence of a confidential relationship is a question of 
fact. Crim Truck & Tractor Co. v. Navistar Intern. Transp. Corp., 
823 S.W.2d 591, 594 (Tex. 1992). We cannot agree that the evidence established 
the existence of a confidential relationship between Frances and Delfino. 
Tricentrol Oil Trading, 809 S.W.2d at 220; Hubbard, 138 S.W.3d 
at 485.
Moreover, neither Delfino's relationship with his former spouse nor his 
statements to Frances concerning the policy, assuming they were made, permit the 
implication that he had an "obligation" to cause the policy proceeds to be paid 
to Frances, and the record is devoid of evidence Delfino expressly undertook 
such an obligation. The uncertain nature of Delfino's alleged obligation 
distinguishes this case from such cases as Mills v. Gray, 210 S.W.2d 
985 (Tex. 1948) and Leigh v. Weiner, 679 S.W.2d 46 (Tex.App.-Houston 
[14th Dist.] 1984, no pet.). The excluded testimony in Mills 
concerned an agreement among family members that property conveyed to one 
of them "would be held by [the grantee] in trust for the benefit of his mother 
and the other children, and that after the [anticipated] divorce he would 
reconvey it to her, or if sold, he would divide the proceeds among the parties 
entitled thereto." 210 S.W.2d at 986-87. Similarly, in Leigh, the jury 
found an agreement existed between the spouses concerning the disposition of 
certain property on the death of the survivor of them. 679 S.W.2d at 47. No 
evidence of such an express agreement appears here. 
(6)
Appellants emphasize the unjust enrichment of Gloria brought about by the 
trial court's ruling. They cite Pope v. Garrett, 211 S.W.2d 559 (Tex. 
1948) and Ginther v. Taub, 675 S.W.2d 724 (Tex. 1984) for the 
proposition that a constructive trust may be imposed to prevent unjust 
enrichment of one who would otherwise benefit from the wrongdoing of another. (7) In Pope, the jury found that when a 
will the decedent had requested to be prepared was presented to her, family 
members physically prevented her from executing it. 211 S.W.2d at 559-60. 
Because the will was not executed, the decedent died intestate. Shares of the 
estate were thus inherited by family members who took part in the wrongful 
conduct and by family members who were not present at the aborted will execution 
ceremony. The supreme court held that imposition of a constructive trust was 
appropriate with respect to the shares inherited by the innocent heirs at law, 
as well as to those inherited by the wrongdoers. Id. at 562. Here, the 
trial court did not find that Delfino breached a duty to Frances or otherwise 
committed any wrongful act. The absence of evidence of wrongdoing by Delfino 
distinguishes the case at bar from Pope. Similarly, Ginther v. 
Taub involved fraud committed by a lawyer in breach of his fiduciary duty 
to his client. 675 S.W.2d at 727. Neither case provides a basis to establish the 
trial court abused its discretion by refusing to impose a constructive trust 
here. 
Finally, and particularly with respect to appellants' argument for imposition 
of a resulting trust, appellants note the case law holding that one of the 
elements for the imposition of a resulting trust is payment of the consideration 
must have occurred at the time of purchase of the property in question. See 
Sahagun v. Ibarra, 90 S.W.3d 860, 863-64 (Tex.App.-San Antonio 2002, no 
pet.) (stating rule). Appellants argue that because the policy on Delfino's life 
was a term policy maintained in effect only by the timely payment of monthly 
premiums, ownership of the policy and its proceeds was purchased each month as 
Frances paid the premium. The evidence did not compel the trial court to adopt 
that view. Although the policy was a term policy and presumably had no cash 
value, it was undisputed the policy was purchased in 1986 and ownership of it 
was awarded to Delfino by the 1994 divorce decree. We decline to hold that the 
trial court abused its discretion by failing to impose a resulting trust on the 
policy or its proceeds based on Frances's later payment of premiums. 
Accordingly, we overrule appellants' issue and affirm the judgment of the 
trial court. 

James T. Campbell
Justice






1. Appellants Richard Camacho, Vivian C. Trevino, and 
Deborah Ann Camacho, cihldren of Frances and Delfino, were also plaintiffs in 
the trial court. Alternative to Frances's claim to the proceeds, they asserted 
claims for the policy proceeds as Delfino's heirs at law. 
2. The record reflects Frances and Delfino were married for 
27 years prior to their divorce. 
3. Gloria also died after this lawsuit was filed and her 
heirs-at-law were substituted in her place. Her heirs-at-law are appellees 
Carlos R. Montes and Stephen R. Garcia. 
4. Under the Family Code, designation of the insured's 
former spouse as beneficiary under a life insurance policy in force at the time 
of divorce is not effective unless (1) the divorce decree designates the former 
spouse as beneficiary; (2) the insured re-designates the former spouse as 
beneficiary after divorce; or (3) the former spouse is designated to receive the 
policy proceeds as trustee for a child or dependent of either of the former 
spouses. Tex. Fam. Code Ann § 9.301 (Vernon 2006). 
5. The policy provided for payment of its proceeds to the 
insured's "widow or widower" if no designated beneficiary survived him. 
6. Mills and Leigh are further 
distinguishable from this case by the family relationships among the parties of 
the purported agreement in Mills, 210 S.W.2d at 986, and the 
husband-wife relationship in Leigh, 679 S.W.2d at 47. 
7. There is no contention that Gloria can be viewed as a 
wrongdoer. Appellants do not challenge the trial court's finding that "Gloria 
Garcia Camacho committed no fraud, duress or other wrong doing for the purpose 
of making her the beneficiary of the policy." Gloria testified she did not know 
that marrying Delfino would bring her any financial advantage, and there is no 
evidence to the contrary. The second element required for imposition of a 
constructive trust, that of unjust enrichment of the wrongdoer, is not met in 
this case. See Hubbard, 138 S.W.3d.at 485.